FILED
U.S. DISTRICT COURT

2013 MAR -6  ⊃ 3: 59

DISTRICT OF UTAH

BY:_____
     DEPUTY CLERK

Mark J. Williams (3494)
markwilliams@ppktrial.com
Jason M. Kerr (8222)
jasonkerr@ppktrial.com
PRICE PARKINSON & KERR, PLLC
5742 W. Harold Gatty Dr.
Salt Lake City, Utah 84116
Telephone: (801) 530-2900
Facsimile: (801) 530-2957

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT IN AND FOR

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANMEDICA INTERNATIONAL, LLC, a Utah limited liability company; WESTERN HOLDINGS, LLC, a Nevada limited liability company,<br><br>     Plaintiffs,<br><br>vs.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>     Defendant. | **COMPLAINT**<br>**AND JURY DEMAND**<br><br>Case: 2:13-cv-00169<br>Assigned To : Wells, Brooke C.<br>Assign. Date : 03/06/2013<br>Description: Sanmedica International et al v. Amazon.com |

Plaintiffs SanMedica International, LLC (SanMedica) and Western Holdings, LLC (Western) (together referred to as "Plaintiffs") complain against Defendant Amazon.com, Inc. (hereafter referred to as "Defendant") as follows:

## **INTRODUCTION**

Plaintiff Sanmedica markets and sells a product called Serovital™.  Serovital is a patent-pending dietary supplement that has been shown in a double-blind, placebo-controlled study to promote the human body's natural production of serum human growth hormone levels by a mean over baseline of over 600%.  Although there are many products that claim to assist the body in producing growth hormone, Serovital is unique, because only it has been shown to be effective for both men and women of a wide age range.[1]

Defendant is a well-known internet retailer.  Plaintiff Sanmedica offered to sell Serovital on the Amazon website.  However, Amazon refused, claiming that it did not sell dietary supplement products that claimed to increase human growth hormone, like Serovital.

In fact, Amazon does sell products that claim to increase HGH levels and compete with Serovital, including Original Formula GH3, Gerovital, AminoGH, Secratatropin HGH, Genf20 Plus, Controlled Labs Blue Growth, Gerovital H3 Evolution, and HGH Complex.  Furthermore, Amazon purchased advertisements with search engine providers, including Bing, Yahoo, and Google, which produce the following results listing for searches for "Serovital" and "Serovital hgh":

> **Serovital-hgh** at Amazon- Qualified orders over $25 ship free.
> Buy **Serovital-hgh** at Amazon!
> www.**Amazon.com**

---

[1] Plaintiff Western owns the intellectual property associated with Serovital, including the Serovital trademark.

Yet when the foregoing search listing for Amazon is clicked on, it takes the potential customer

seeking Serovital to the Amazon.com site to a page that offers other competing dietary

supplements for sale, but not Serovital.

Amazon's advertisements constitute false and misleading statements that are likely to

cause confusion and mistake among prospective buyers of Serovital. In fact, when typing the

words "Serovital-HGH" into Bing and Yahoo, the Amazon result is often the first or second

result on the page. And on Amazon's own drop-down search screen, when a consumer types in

the word "Serovital" numerous other search terms appear including "Serovital hgh in health and

personal care" and "Serovital hgh dietary supplement". However, when a consumer clicks on

any of these links, products marketed by competitors of plaintiff appear for purchase. Defendant

thus capitalizes on the goodwill of Plaintiff's scientifically supported product and carefully-

developed intellectual property in order to "bait" people searching for Plaintiffs' product into

viewing Defendant's website, where Defendant is then able to "switch" the product purportedly

being offered to products other than those marketed and sold by Plaintiffs. Defendant's actions

are especially nefarious as it is using the name of Serovital, which is scientifically substantiated,

to sell products that lack scientific support for their claims. This is therefore a classic bait and

switch case—falsely claiming to have a superior product for sale in order to sell an inferior

product.

Defendant's actions violate the Lanham Act, various common law doctrines, and the

Utah Truth in Advertising Act and entitle Plaintiff to the relief set forth below.

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Sanmedica International, LLC is a limited liability company organized

and existing under the laws of the State of Utah. Its principal place of business is located at 5742 West Harold Gatty Drive in Salt Lake City, Utah. Sanmedica produces, markets, and sells Serovital.

2.     Plaintiff Western Holdings, L.L.C. is a limited liability company organized and existing under the laws of the state of Nevada. Its principal place of business is located at 1000 East William Street, suite 204 Carson City, Nevada 89701. Western owns the trademark for Serovital and copyrights to its packaging, along with all other intellectual property associated with Serovital. Western licenses the use of its intellectual property to Sanmedica to produce, market, and sell Serovital.

3.     Defendant Amazon.com, Inc. is, on information and belief, a corporation organized and existing under the laws of the state of Delaware. Its principal place of business is located in Seattle, Washington 98144.

4.     Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. § 1338 and the Lanham Act, 15 U.S.C. § 1121.

5.     This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367, in that the state law claims are integrally related to the federal claims and arise from a common nucleus of operative facts, such that the resolution of all claims herein is in the interests of judicial economy.

6.     The Court has personal jurisdiction over Defendant pursuant to the Utah Long Arm Statute, Utah Code Ann. § 78B-3-201 because Defendant has (a) transacted business in this State and (b) engaged in tortious activity causing injury in this state. Specifically, the Defendant has falsely advertised Plaintiffs' Serovital product for sale in the state of Utah when it does not in

fact offer it for sale, and transacts business generally within the state of Utah by selling and

supplying goods to the residents of the state of Utah. Furthermore, the Defendants have caused

injury to the Plaintiffs in the State of Utah.

      7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

## GENERAL ALLEGATIONS

### The Product

      8.     Plaintiff Sanmedica is engaged in the business of marketing, selling and

developing dietary and health supplements.

      9.     Plaintiff Sanmedica offers a 100% money-back guarantee to any consumer who is

dissatisfied with the product for any reason. In compliance with the guarantee, customers need

only return the unused portion for a full refund. Plaintiff always honors and fulfills its 100%

money-back guarantee in accordance with the terms of its guarantee.

      10.    Plaintiff Sanmedica sells Serovital directly to consumers through its internet

websites and call center, and to retailers that market and sell to consumers throughout the United

States.

      11.    Plaintiff Sanmedica advertises and promotes its products in numerous print,

electronic, and broadcast media in national circulation and on its own websites.

      12.    Plaintiff Sanmedica markets and sells Serovital through the national retailer Ulta,

and is in the process of expanding to other national retailers.

      13.    Plaintiffs Sanmedica and Western have expended a great deal of time, effort, and

money to develop, study, market, advertise, and promote Serovital.

14.     In 2011, Sanmedica funded research at Pennington Biomedical Research Center at Louisiana State University, one of the premier medical research institutes in the United States, on the patent-pending formulation for Serovital.

15.     On January 14, 2012, Sanmedica received the results of the study.

16.     The study was a cross-over, placebo-controlled randomized study.  Sixteen healthy subjects had serum GH measured at baseline and 15, 30, 60, 90 and 120 minutes after taking a single dose of Serovital or placebo.

17.     After 120 minutes, GH levels had increased 8-fold from baseline and were significantly higher than placebo.  In addition, a significantly higher mean area under the curve (AUC) was observed after taking the supplement.

18.     Thus, the study showed that a single oral dose of Serovital can significantly increase GH Levels after 120 minutes in healthy men and women.

19.     No other so-called HGH dietary supplements, including the products advertised on Amazon, have studies like the Pennington study supporting their claims.

20.     On September 20-24, 2012, Sanmedica presented the results of the Pennington study at the annual conference of the Obesity Society in San Antonio, Texas.

21.     The results of the Pennington study were so compelling that Dr. Oz, the well-known television personality, featured the study on his national television program on October 31, 2012.

22.     Over the past year, there have been significant media coverage of HGH, such that the consuming public has become much more informed about the positive health benefits of HGH.

23.     The Plaintiff's products have developed a reputation of high quality and goodwill in the industry and the consuming public.

24.     The Serovital trademark was first used in interstate commerce on September 14, 2012.  An application for registration of that trademark was filed in the United States Patent and Trademark Office (the "USPTO") on March 5, 2012.  The trademark was published for opposition by the USPTO on December 18, 2012 (a true and correct copy of a status report regarding the trademark is attached hereto as Exhibit "A").  Plaintiffs are unaware of any opposition to said trademark registration that has been timely filed with the USPTO or any other claims of competing rights to said product by any other persons or entities.  On February 14, 2013 the USPTO issued a notice of allowance.  On March 6, 2013, Western filed a notice of use. Western expects to the USPTO to issue a notice that the Serovital mark has registered shortly.

25.     Serovital is an arbitrary word chosen by Plaintiff Western as its trademark due to its uniqueness.

26.     Plaintiffs have expended a great deal of time, effort, and money developing its intellectual property rights in connection with Serovital™ including the trademark, packaging trade dress, copyrighted label, copyrighted package insert, and copyrighted advertisements that have appeared in numerous newspapers and magazines, as well as on Plaintiff's Web sites (*e.g.*, www.Serovital.com).

**Defendant's Internet Advertising**

27.     Defendant has entered into financial arrangements with various internet search engine providers, including without limitation, Bing, Yahoo, and Google, to direct searches of keywords "Serovital" and "Serovital hgh" to a list of search results that prominently produces a

sponsored advertisement by Defendant that states the Defendant offers to sell Serovital, with the following language:

> **Serovital-hgh** at Amazon- Qualified orders over $25 ship free.
> Buy **Serovital-hgh** at Amazon!
> www.**Amazon.com**

Copies of said search results pages from Bing and Yahoo are attached hereto respectively as Exhibits "B" and "C".

28.    Despite the representations of Defendant's sponsored advertisement purporting to offer Serovital for sale to the customers seeking that specific product, when the search listing for Amazon.com is clicked on, it takes the customer to Defendant's website to search results that offer for sale other products, including Original Formula GH3, Gerovital, AminoGH, Secratatropin HGH, Genf20 Plus, Controlled Labs Blue Growth, Gerovital H3 Evolution, and HGH Complex, but not Serovital.  Copies of the search results on Defendant's website for keywords "Serovital" and "Serovital hgh" are respectively attached hereto as Exhibits "D" and "E."

29.    In addition, when a potential customer types the word "Serovital" or "Serovital HGH" on the Amazon Website, a drop-down screen appears offering suggested search terms, all of which include the Serovital trademark.  The suggested search terms include "Serovital HGH in dietary supplements" and "Serovital in Books".  When a customer clicks on one of the suggested search terms, products are offered for sale.  However, none of the products are Serovital.

30.    Plaintiffs have not granted Defendant and Defendant has no right to use the Serovital trademark on its website or to advertise it for sale, especially since Defendant has no

intent to sell Serovital on its website. A copy of the Amazon page suggested search terms are attached as Exhibit "F".

31.     Rather, Defendant, by falsely advertising that Serovital is available for purchase on its website, capitalizes on the goodwill of plaintiff's product and trademark in order to "bait" prospective customers searching specifically for Serovital or Serovital-HGH to Defendant's website, where Defendant can then "switch" the product falsely being advertised for sale to other products marketed and sold by Defendant. This is a classic bait and switch case.

32.     On January 28, 2013, Plaintiff Sanmedica sent a written notice to the Registered Agent for Amazon.com, Inc., pursuant to the Utah Truth in Advertising Act (the "UTAA"), Utah Code Ann. §13-11a-4(5), giving notice to Defendant that is was in violation of the provisions of UTAA by using deceptive, misleading, and false advertising practices relating to the purported sale of Serovital on Defendant's website. As required by the UTAA, Plaintiff's notice ( a copy of which is attached hereto as Exhibit "G") demanded that Defendant, within 10 days of receipt of said notice: (a) remove all advertisements on the internet that advertise, offer, state, or imply in any way that Defendant carries or offers for sale Serovital; (b) promulgate a correction notice with the same search engine providers containing the deceptive advertisements that states that Serovital is not offered for sale by Defendant; and (c) send written proof of its compliance with the demand to Plaintiff with the 10-day period.

33.     Defendant has failed to provide proof that it has complied with the demands of the notice attached hereto as Exhibit "G." And Defendant continues to falsely advertise Serovital for sale as alleged above and to infringe on Plaintiff's trademark by using that trademark in

advertisements placed through search engine providers in a manner likely to cause confusion, mistake or to deceive the public.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement under the Lanham Act)

34.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 33 above, as though set forth fully in this count.

35.      Plaintiff Western is the current, active, and exclusive owner of Serovital's™ valid and legally protected trademark, trade dress, and copyright.  The trademark is active, valid and has not been revoked or canceled.  In addition, the trademarked term is an arbitrary word chosen by Plaintiff Western as its trademark due to its uniqueness.

36.      Defendant has used and is continuing to use Plaintiff Western's trademark in commerce without consent, and Defendant's use is likely to deceive, cause confusion, or result in mistake as to the affiliation, connection, or association of Defendant with Plaintiffs Western and Sanmedica and as to the availability of Serovital on Defendant's website.

37.      Defendant's unauthorized use of Plaintiff Western's trademark has damaged and materially diminished the value of Plaintiff Western's trademark rights, and interfered with Plaintiff Western and Sanmedica's existing and potential business relations.

38.      Defendant's unauthorized use of the Serovital trademark has infringed upon Plaintiff Western's trademark and trade name rights, in violation of 15 U.S.C. §§ 1114 and 1125(a).

39.      As a result of Defendant's conduct, Plaintiffs Western and Sanmedica have suffered damages that include but are not limited to lost sales of its product, trademark

infringement and dilution, and damage to Plaintiffs' existing and potential business relations, together with costs of this action.  In addition, pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of attorneys' fees since Defendant's acts are willful, intentional, and egregious, making this an exceptional case.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition Based on False Representations in violation of Lanham Act 15 U.S.C. § 1125(a)(1)(A))

40.     Plaintiffs re-allege paragraphs 1 through 39 of this Complaint as if set forth in full herein.

41.     Defendant has without authorization, on or in connection with the promotion and sale of its goods in interstate commerce, made or contributed to the making of representations of fact that are false and misleading which are likely to cause confusion, or to cause mistake, or to deceive purchasers and potential purchasers into believing that Plaintiffs' product, Serovital, is available for purchase from Defendant.

42.     Defendant's acts constitute unfair competition and are misleading representations of facts.

43.     Upon information and belief, Defendant's acts of unfair competition and misrepresentations have led to, among other things, initial interest confusion in consumers stemming from Defendant's "bait and switch" practices.

44.     Upon information and belief, Defendant's acts of unfair competition and misrepresentations have deceived and, unless restrained, will continue to deceive the public, including consumers and retailers, and have injured and unless constrained will continue to injure Plaintiffs and the public, including consumers and retailers, causing damages to Plaintiffs

in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of Plaintiff and its product, Serovital.

45.      Upon information and belief, Defendant's acts of unfair competition are willful, intentional and egregious and make this an exceptional case within the meaning of 15. U.S.C. §1117(a), entitling Plaintiffs to attorney's fees.

46.      Plaintiffs have no adequate remedy at law to compensate them for all the damages the Defendant's wrongful acts have and will cause.

### THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

47.      Plaintiff realleges paragraphs 1 through 46 of this Complaint as if set forth in full herein.

48.      Defendant has benefited from the use of Plaintiffs' name, reputation, and goodwill without compensating the Plaintiffs.

49.      Defendant's conduct, directly or through an agent or affiliate, constitutes unjust enrichment to the Defendant.

50.      By virtue of Defendant's unjust enrichment, Plaintiffs have suffered money damages.

### FOURTH CLAIM FOR RELIEF
### (Injunctive Relief)

51.      Plaintiffs re-allege paragraphs 1 through 50 of this Complaint as if set forth in full herein.

52.      Defendant has engaged in deceptive trade practices in violation of the Lanham Act.

53.     Defendant's acts will continue to deceive the public, including consumers and retailers, unless the Court enjoins Defendant from advertising, marketing, or purporting to sell Serovital—that it in fact has no intention to sell—or from engaging in any other false advertising with regard to Plaintiffs' products or engaging in any other unfair competition based upon false and misleading or confusing statements related to Serovital.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Relief)

54.     Plaintiffs re-allege paragraphs 1 through 53 of this Complaint as if set forth in full herein.

55.     Based on the allegations contained in this Complaint, there is a present and actual need for a judicial declaration.

56.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs are entitled to and hereby move the Court for a judgment declaring that:

a.     Defendant's advertising is illegal, confusing, likely to confuse or otherwise misleading.

b.     Plaintiffs have a legally protectable interest in preventing Defendant's advertising.

c.     Plaintiffs have suffered real harm as a result of Defendant's advertising.

d.     Defendant's advertising is likely to confuse the public into believing that the Defendant is authorized to sell Serovital and/or that the public may in fact order Serovital through Defendant's website.

e.     Defendant should pay Plaintiffs their attorney fees and costs incurred in prosecuting this action.

## SIXTH CLAIM FOR RELIEF

### (Violation of Utah Truth in Advertising Act)

57.     Plaintiffs re-allege paragraphs 1 through 56 of this Complaint as if set forth in full herein.

58.     Defendant's advertisements as alleged above are deceptive practices under the Utah Truth in Advertising Act, Utah Code Ann. §13-1a-3 (the "UTAA"), since they cause the likelihood of confusion or of misunderstanding by advertising the sale of Serovital on Defendant's website, without intending to sell them to the public.

59.     The advertisements alleged above were made in and to residents of the state of Utah.

60.     Plaintiffs have suffered damages as a result of the misleading and false advertisements of Defendant and will continue to suffer damage unless the Court enjoins Defendant from advertising, marketing, or purporting to sell Serovital or from engaging in any other false advertising with regard to Plaintiffs' product or engaging in any other unfair competition based upon false and misleading or confusing statements related to Serovital.

61.     In addition to injunctive relief under the UTAA, Plaintiffs are entitled to recover actual damages it sustains as a consequence of Defendant's violation of the UTAA, together with costs and attorney's fees incurred in bringing this claim.

62.     Pursuant to the UTAA, Plaintiffs are entitled to statutory damages of $2,000.00 per violation, or in other words, Plaintiffs are entitled to $2,000.00 for each potential customer who clicked on an offending link.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     A permanent injunction against Defendant, its officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, enjoining and restraining them from directly or indirectly:

1.     Advertising, marketing, or offering to sell Serovital in any source, including any internet search engine provider, or in any manner on Defendant's website; or

2.     Publishing, displaying, distributing, disseminating or using, or permitting or entering into or performing any agreement for the publication, display, distribution, or use of Plaintiffs' trademarked name, Serovital.

B.     An order requiring Defendant to immediately remove, or cause to be removed, all advertisements that purport to or imply that Defendant sells Serovital on its website.

C.     Judgment on all claims for the damages suffered by Plaintiffs as a result of Defendant's unfair competition and deceptive acts and practices, in an amount to be determined at trial.

D.     Judgment on the First, Second, and Sixth Claims for Relief awarding Plaintiff reasonable attorney's fees in this action, pursuant to 15 U.S.C. § 1117 and Utah Code Ann. §13-11a-4, respectively.

E.     Judgment awarding statutory damages under the Plaintiffs' UTAA claim.

F.     Judgment awarding Defendant's profits to Plaintiffs, and awarding damages sustained by the Plaintiffs and the costs of the action.

G.     Judgment for punitive damages as a result of Defendant's outrageous conduct and willful and intentional violations.

H.     Judgment on all claims awarding Plaintiffs costs and attorney's fees in this action.

I.     Declaratory relief as requested.

J.     Injunctive Relief as requested.

K.     Such other relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all matters that may be tried by a jury.

DATED this _6th_ day of March, 2013.

PRICE PARKINSON & KERR, PLLC

By:_____
Mark J. Williams
Jason M. Kerr
Attorneys for Plaintiffs