IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANMEDICA INTERNATIONAL, LLC, a Utah limited liability company; WESTERN HOLDINGS, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>**<u>FILED UNDER SEAL</u>**<br><br>Case No. 2:13-cv-00169-DN<br><br>District Judge David Nuffer |

Presently pending are the parties' cross-motions for summary judgment filed on July 21,

2014.[1] For the reasons set for below, after reviewing the parties' memoranda, the undisputed

facts and the relevant legal authorities, Amazon's motion for summary judgment is hereby

GRANTED in part and DENIED in part, and Plaintiffs' motion for partial summary judgment is

DENIED. Oral argument is unnecessary.[2]

---

[1] Defendant Amazon.com, Inc.'s Motion for Summary Judgment as to Liability and Damages ("Amazon's MSJ"), <u>docket no. 59</u>, filed July 21, 2014 (filed under seal). *See also* Redacted-Nonconfidential Defendant Amazon.com, Inc.'s Motion for Summary Judgment as to Liability and Damages, <u>docket no. 63</u>, filed July 22, 2014; Plaintiffs' Motion and Supporting Memorandum for Partial Summary Judgment Regarding Liability and for Injunction Pursuant to the Utah Truth in Advertising Act and the Lanham Action ("Plaintiffs' MPSJ"), <u>docket no. 62</u>, filed July 21, 2014 (filed under seal). *See also* Redacted-Nonconfidential Plaintiffs' Motion and Supporting Memorandum for Partial Summary Judgment Regarding Liability and for Injunction Pursuant to the Utah Truth in Advertising Act and the Lanham Act, <u>docket no. 69</u>, filed July 25, 2014.

[2] *See* DUCivR 7–1(f).

BACKGROUND .......................................................................................................................... 2
STANDARD OF REVIEW ........................................................................................................ 4
UNDISPUTED MATERIAL FACTS ........................................................................................ 4
ANALYSIS................................................................................................................................... 9
    Summary Judgment on Plaintiffs' Trademark Infringement Claim under § 32 of the
        Lanham Act, codified as 15 U.S.C § 1114 is Inappropriate ...................................... 9
        *The Degree of Similarity of the Marks* .................................................................... 12
        *The Intent of the Alleged Infringer in Adopting its Mark* ...................................... 12
        *Evidence of Actual Confusion* ................................................................................ 13
        *The Relation in Use and the Manner of Marketing Between the Goods or
            Services Marketed by the Competing Parties* ........................................................ 14
        *The Degree of Care Likely to be Exercised by Purchasers* ................................... 14
        *The Strength or Weakness of the Marks* ................................................................. 15
        *Other Relevant Factors* .......................................................................................... 16
    Summary Judgment is Granted in Favor of Amazon as to Plaintiffs' Trademark
        Infringement Claim under § 43(a) of the Lanham Act, codified as 15 USC §
        1125(a) ...................................................................................................................... 17
    Summary Judgment on Plaintiffs Utah Truth in Advertising Act Claim is
        Inappropriate ............................................................................................................ 22
        *Utah Code Ann. § 13-11a-3(1)(i)* ........................................................................... 23
        *Utah Code Ann. § 13-11a-3(1)(t)* ........................................................................... 25
    Plaintiffs Are Not Entitled To Summary Judgment for a Permanent Injunction.............. 25
        *Injunctive Relief Under § 1114(1)(a) of the Lanham Act* ...................................... 26
        *Injunctive Relief Under UTAA* ............................................................................... 27
    Amazon is Entitled to Summary Judgment that Statutory Damages Under the UTAA
        Are Limited to a Single Award of $2,000............................................................... 27
ORDER ...................................................................................................................................... 30

## BACKGROUND

Plaintiff Western Holdings, LLC ("Western Holdings") owns the trademark for

SeroVital, a dietary supplement that promotes the human body's natural production of serum

human growth hormone levels. Plaintiff SanMedica International, LLC ("SanMedica") has a

license to use the SeroVital trademark. Starting November 15, 2012, SanMedica offered

SeroVital for sale on Amazon.com ("Amazon"). On or about December 12, 2012, Amazon

removed the SeroVital product from the Amazon marketplace for a policy violation. Although

SeroVital was no longer available for purchase on the Amazon marketplace, Amazon's internal

bidding system (Hydra) continued to bid on the word SeroVital with search engines, such as

Google, Bing, and Yahoo. Consequently, Hydra generated and published ads on the search engines when consumers searched for SeroVital. The sponsored ads represented that SeroVital could be purchased at Amazon. These sponsored ads continued to appear through September 9, 2013.

On March 6, 2013, Plaintiffs filed a Complaint[3] against Amazon. Plaintiffs subsequently filed an Amended Complaint[4] on September 3, 2013, which sets forth causes of action for: (1) trademark infringement under the Lanham Act; (2) unfair competition based on false representation in violation of Lanham Act 15 U.S.C. § 1125(a)(1)(A); (3) unjust enrichment; (4) injunctive relief; (5) declaratory relief; and (6) violation of the Utah Truth in Advertising Act[5] ("UTAA").

Amazon has moved for summary judgment on Plaintiffs' trademark infringement, unfair competition based on false representation, unjust enrichment, and UTAA claims.[6] Amazon contends that summary judgment should be granted in its favor on the above claims because Plaintiffs cannot show any likelihood of confusion resulting from Amazon's use of the SeroVital mark.[7] "Alternatively, Amazon asks the Court to enter judgment in favor of Amazon on Plaintiffs' claim to actual damages, and also decide the maximum allowable statutory damages under the . . . [UTAA]."[8] Plaintiffs' cross-move for partial summary judgment on their claims for trademark infringement, unfair competition based on false representation, violation of the UTAA, and injunctive relief.[9]

---

[3] Complaint and Jury Demand, docket no. 1, filed March 6, 2013.

[4] Amended Complaint and Jury Demand, docket no. 31, filed September 3, 2013.

[5] Utah Code Ann. § 13-11a-1, et al.

[6] Amazon's MSJ at 2.

[7] *Id.*

[8] *Id.*

[9] Plaintiffs' MPSJ at 2.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] When analyzing a motion for summary judgment, the court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[11] However, "the nonmoving party must present more than a scintilla of evidence in favor of his position."[12] A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13] "The fact that the parties have filed cross-motions for summary judgment does not affect the applicable standard."[14]

## UNDISPUTED MATERIAL FACTS

The following material facts are mostly undisputed in the briefing, but where facts offered were disputed, those disputes have been removed by editing and only the undisputed portions remain. Some minor edits and consolidations have been made to improve readability without changing meaning.

1.      Western Holdings is a limited liability company organized and existing under the laws of the state of Nevada. Western Holdings owns the trademark for SeroVital.[15]

---

[10] Fed. R. Civ. P. 56(a).

[11] *Mathews v. Denver Newspaper Agency LLP,* 649 F.3d 1199, 1204 (10th Cir. 2011) (citation and internal quotations omitted).

[12] *Ford v. Pryor,* 552 F.3d 1174, 1178 (10th Cir. 2008) (citations omitted).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Kerber v. Qwest Group Life Ins. Plan,* 647 F.3d 950, 959 (10th Cir. 2011).

[14] *Ditty v. CheckRite, Ltd., Inc.,* 973 F. Supp. 1320, 1326 (D. Utah 1997) (citing *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993)).

[15] Plaintiffs' MPSJ at 9; Defendant Amazon.com, Inc.'s Opposition to Plaintiffs' Motion for Partial Summary Judgment and for Injunctive Relief at 12 ("Amazon's Opposition"), docket no. 83, filed August 21, 2014 (filed under seal).

2.      The SeroVital trademark was first used in interstate commerce on September 14,

2012. An application for registration of that trademark was filed in the United States Patent and

Trademark Office (the "USPTO") on March 5, 2012. The trademark was published for

opposition by the USPTO on December 18, 2012. And on May 21, 2013, the USPTO issued a

certificate of trademark registration to Western for SeroVital, Reg. No. 4,339,758.[16]

3.      Western Holding licenses the use of its trademark to SanMedica.[17]

4.      SanMedica is a limited liability company organized and existing under the laws of

the State of Utah, with its principal place of business in Salt Lake City, Utah.[18]

5.      Hydra is:

Amazon's internal bidding system . . . that automatically generates and
evaluates paid advertisements on search engines such as Google, Yahoo or
Bing.



---

[16] Plaintiffs' MPSJ at 9; Amazon's Opposition at 13.

[17] Plaintiffs' MPSJ at 9; Amazon's Opposition at 12. *See also* Nunc Pro Tunc Licensing Agreement, docket no. 61-4.

[18] Plaintiffs' MPSJ at 9; Amazon's Opposition at 13.

[19] Plaintiffs' MPSJ at 14; Amazon's Opposition at 18–19. *See also* docket no. 62-10.

6.     Amazon (AMZN00000015) describes the four components of a sponsored links ad generated by Hydra as:



7.     SeroVital was offered for sale on the Amazon Marketplace on or about November 15, 2012.

8.     Hydra identified the word "SeroVital" beginning on or about November 15, 2012 . . . and consequently, Hydra bid on the word SeroVital with Google, Bing, and Yahoo. Thereafter, Hydra generated and published[21] ads when consumers searched for "SeroVital" or "SeroVital hgh" on Google, Bing, and Yahoo, with the following language:[22]

> **Serovital at Amazon.com- Qualified orders over $25 ship free. Buy Serovital at Amazon!**
> **www.Amazon.com**
>
> **and**

---

[20] Plaintiffs' MPSJ at 15; Amazon's Opposition at 19–20. *See also* docket no. 62-10.

[21] There is a dispute among the parties whether the ads were "customized". "Sponsored" is a better description. Hydra bids on certain keywords, and when the keyword is matched to a user's search query, an ad is generated with the keyword and a sponsored ad is shown in the search results.

[22] Plaintiffs' MPSJ at 10–11; Amazon's Opposition at 15.

**Serovital-hgh at Amazon- Qualified orders over $25 ship
free. Buy Serovital-hgh at Amazon!**
www.Amazon.com

9.      Hydra's [sponsored] ads . . . claiming SeroVital was for sale on Amazon were

consistent with the four components described in AMZN00000015, and helped Amazon attract

customers to its website.[23]

10.     Amazon removed the SeroVital product from the Amazon Marketplace for a

policy violation on or about December 12, 2012.[24]

11.     Amazon "stop-listed" the keyword "SeroVital" from use in its sponsored ads

published by search engines on desktop computers on March 15, 2013.[25] But some ads continued

to appear through September 9, 2013.[26]

12.     From December 13, 2012 through at least September 9, 2013 ("Advertising

Period"), Amazon's sponsored ads [for SeroVital] continued to be published when consumers

searched for "SeroVital" or "SeroVital hgh" on Google, Yahoo, and Bing.[27]

13.     During the Advertising Period, Hydra generated over         sponsored ads.

There were        clicks on the sponsored ads. Of those who entered Amazon's store during the

Advertising Period,     purchased some product other than SeroVital.[28]

14.     Each . . . ad . . . represented that SeroVital was for sale and could be purchased on

Amazon. But when a consumer clicked on the sponsored ad, it took him or her to a landing page

on Amazon.com that contained offers for sale of other products, but not SeroVital. Other

---

[23] Plaintiffs' MPSJ at 16; Amazon's Opposition at 20–21.

[24] Amazon's Opposition at 23; Plaintiffs' Reply in Support of . . . [Plaintiffs' MPSJ] at 34 ("Plaintiffs' Reply"),
docket no. 101, filed September 15, 2014 (filed under seal).

[25] Plaintiffs' MPSJ at 13; Amazon's Opposition at 18.

[26] Plaintiffs' MPSJ at 16; Amazon's Opposition at 20–21.

[27] Plaintiffs' MPSJ at 11; Amazon's Opposition at 16.

[28] Plaintiffs' MPSJ at 11–12; Amazon's Opposition at 16.

products included, at times, Original Forumula GH3, AminoGH, Secratatropin HGH, Genf20 Plus, Controlled Labs Blue Growth, Gerovital H3 Evolution, and HGH Complex.[29]

15.     During the period when Amazon ran the accused ads, but SeroVital was unavailable in the Amazon Marketplace, users who clicked on the accused ads were taken to pages at Amazon.com that did not show SeroVital. Rather, other products appeared, which were clearly labeled and were not represented by Amazon or third-party sellers to be SeroVital.[30]

16.     There is no evidence of actual confusion resulting from Amazon's use of the SEROVITAL mark.[31]

17.     In all ads in which it used the SEROVITAL mark, . . . [it was] clear that the ad was placed by Amazon, and the stated URL disclosed that clicking on the ad would take the user to Amazon.com.[32]

18.     On January 28, 2013, SanMedica sent a written notice to the Registered Agent for Amazon.com, Inc., pursuant to the . . . [UTAA],[33] giving notice to Amazon that it was in violation of the provisions of the UTAA by using deceptive, misleading, and false advertising practices relating to the purported sale of SeroVital on Amazon's website. As required by the UTAA, Plaintiff's notice demanded that Amazon, within 10 days of receipt of said notice: (a) remove all advertisements on the internet that advertise, offer, state, or imply in any way that Amazon carries or offers for sale SeroVtal; (b) promulgate a correction notice with the same search engine providers containing the deceptive advertisements that states that SeroVital is not

---

[29] Plaintiffs' MPSJ at 12-13; Amazon's Opposition at 16–17.

[30] Amazon's Opposition at 23; Plaintiffs' Reply at 34.

[31] Amazon's Opposition at 24; Plaintiffs' Reply at 34–35.

[32] Amazon's Opposition at 24; Plaintiffs' Reply at 35.

[33] Utah Code Ann. §13-11a-4(5).

offered for sale by Amazon; and (c) send written proof of its compliance with the demand to Plaintiffs within the 10-day period.[34]

19.     Amazon has failed to provide proof that it has complied in a timely manner with the demands of the notice. And after the filing of the original complaint on March 6, 2013, Amazon continued for approximately six months, until September 2013, to . . . advertise SeroVital for sale . . . by using that trademark in advertisements placed through search engine providers.[35]

20.     After Amazon removed SeroVital from Amazon.com, Amazon sold ███ in various goods and services who arrived at Amazon.com by clicking on an accused ad.[36]

## ANALYSIS

### Summary Judgment on Plaintiffs' Trademark Infringement Claim under § 32 of the Lanham Act, codified as 15 U.S.C § 1114 is Inappropriate

Plaintiffs' first cause of action is for trademark infringement pursuant to § 1114(1)(a) of the Lanham Act. Section 1114(1)(a) allows the owner of a registered mark to bring an infringement action against any person who "*use[s]* in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with *which* such use *is likely to cause confusion,* or to cause mistake, or to deceive. . . ."[37] In order to establish a claim of trademark infringement under § 1114(1)(a) of the Lanham Act, four elements must be established: (1) the mark is valid and legally protected; (2) the mark is owned by the plaintiff; (3)

---

[34] Plaintiffs' MPSJ at 16; Amazon's Opposition at 21.

[35] Plaintiffs' MPSJ at 16; Amazon's Opposition at 21–22.

[36] Amazon's Opposition at 24; Plaintiffs' Reply at 35.

[37] 15 U.S.C. § 1114(1)(a).

9

the defendant used the trademark in commerce without consent; and (4) defendant's use of the trademark will create the likelihood of confusion.[38]

In the present case, there is no dispute that the mark is valid and legally protected. The SeroVital mark is registered with the United States Patent and Trademark Office.

There is also no dispute that Western Holdings is the registered owner of the mark.

The third element requires unauthorized use of the mark in commerce. Amazon contends that Plaintiffs gave it a license to use the mark when they listed the product for sale on Amazon.com.[39] Amazon claims that § 4 of the "Amazon Services Business Solutions Agreement dated November 2, 2012, grant[s] Amazon a 'royalty-free, non-exclusive, worldwide, perpetual, irrevocable right and license to use' materials and trademark related to product sold on the Amazon site[.]"[40] And "[t]he terms of the license allowed Amazon to use the SeroVital mark in advertisements unless and until Plaintiffs asked Amazon to discontinue certain uses."[41]

Plaintiffs take issue with the document. Plaintiffs argue, among other things, that "[t]here is no explanation who, if anyone, signed the document, or in what capacity, and for what product. . . . Thus, there is no evidentiary foundation for its introduction or use."[42]

The third element has been met. It is undisputed that on January 28, 2013, Plaintiffs notified Amazon about the issue and demanded that Amazon discontinue using Plaintiffs' trademark. Amazon has not shown that it had a license to use the trademark after it was notified to discontinue the use of the trademark on January 28, 2013.

---

[38] 15 U.S.C. § 1114(1)(a).

[39] Amazon's Opposition at 3.

[40] *Id.* at 3–4.

[41] *Id.* at 4.

[42] Plaintiffs' Reply at 6.

The only remaining factor to consider is whether Amazon's use of Plaintiffs' mark likely caused consumer confusion. "The Lanham Act is intended 'to protect the ability of consumers to distinguish among competing producers,' not to prevent all unauthorized uses."[43] Consequently, in order to constitute trademark infringement, the party alleging infringement has the burden of proving likelihood of confusion from the unauthorized use of the trademark.[44]

The Tenth Circuit has recognized three types of confusion: direct confusion, indirect confusion, and initial interest confusion.[45] The type of confusion alleged by Plaintiffs is initial interest confusion.[46] "Initial-interest confusion 'results when a consumer seeks a particular trademark holder's product and instead is lured to the product of a competitor by the competitor's use of the same or a similar mark.'"[47] "As the name implies, the improper confusion occurs even if the consumer becomes aware of the defendant's actual identity before purchasing the product."[48] A court, however "cannot simply assume a likelihood of initial interest confusion, even if it suspects it," as the "proponent of such a theory must prove it."[49] Initial interest confusion is evaluated according to the six-prong test announced in *King of the Mountain Sports Inc. v. Chrysler Corp.*[50] "These factors are not exhaustive. And they should not be applied

---

[43] *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research,* 527 F.3d 1045, 1052 (quoting *Two Pesos v. Taco Cabana,* 505 U.S. 763, 774, 112 S. Ct. 2753, 120 L.Ed.2d 615 (1992)).

[44] *Australian Gold, Inc. v. Hatfield,* 436 F.3d 1228, 1238 (10th Cir. 2006).

[45] *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229 (10th Cir. 2013).

[46] Plaintiffs' MPSJ at 4 (stating that Plaintiffs were victims of Amazon's unlawful bait advertising).

[47] *1-800 Contacts,* 722 F.3d at 1239 (quoting *Australian Gold,* 436 F.3d at 1238).

[48] *Id.*

[49] *Vail Associates, Inc. v. Vend-Tel-Co., Ltd.,* 516 F.3d 853, 872 (10th Cir. 2008); *see also Network Automation, Inc. v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137, 1149 (9th Cir. 2011) ("[W]hen we examine initial interest confusion, the owner of the mark must demonstrate likely confusion, not mere diversion."); *1–800 Contacts,* 722 F.Supp.2d at 1173 ("'Likelihood of confusion' signifies more than a mere possibility.").

[50] 185 F.3d 1084, 1089 (10th Cir. 1999).

mechanically; some factors may carry far more weight than others depending on the circumstances."[51] The factors are:

> (a) the degree of similarity between the marks;
> (b) the intent of the alleged infringer in adopting its mark;
> (c) evidence of actual confusion;
> (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;
> (e) the degree of care likely to be exercised by purchasers; and
> (f) the strength or weakness of the marks.[52]

"Likelihood of confusion is ordinarily a question of fact for the jury, but summary judgment is appropriate if no reasonable juror could find that such a likelihood exists."[53] Accordingly, the *King of the Mountain* factors apply to Plaintiffs' trademark infringement claim and are analyzed separately below.

### The Degree of Similarity of the Marks

Similarity between marks is tested on the levels of sight, sound, and meaning.[54] The issue in the present case is not that Amazon is using a mark of its own which has a strong likeness to SeroVital, instead, this case concerns the use of Plaintiffs' exact mark in advertisements sponsored by Amazon. The marks, therefore, are identical. This factor weighs in favor of finding of likelihood of confusion.

### The Intent of the Alleged Infringer in Adopting its Mark

Under this factor, the focus is on "whether defendant[s] had the intent to derive benefit from the reputation or goodwill of plaintiff[s]."[55] Amazon argues it had no intent to derive

---

[51] *1-800 Contacts*, 722 F.3d at 1239.

[52] *Id.*

[53] *Id.* at 1242; *see also Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002); *King of the Mountain*, 185 F.3d at 1089 ("Courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion." (brackets and internal quotation marks omitted)).

[54] *King of the Mountain*, 185 F.3d at 1091.

[55] *Id.* at 1091–92.

benefit from the reputation or goodwill of Plaintiffs because the product violated its Drugs, Drug Paraphernalia & Dietary Supplements policy and Amazon considered the product objectionable and dangerous.[56] Plaintiffs argue that an inference or a presumption of likelihood of confusion is established because the mark was not chosen randomly or by accident; instead, Amazon, through its Hydra program, intentionally chose to create ads representing SeroVital for sale.[57]

"Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion."[58] "Conversely, if the evidence indicates a defendant did not intend to derive benefit from a plaintiff's existing mark, this factor weighs against the likelihood of confusion."[59] Accordingly, "[t]he proper focus under this factor is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff."[60]

There is a dispute of fact whether Amazon intended to use the mark after it banned the sale of SeroVital, and also whether Amazon intended to derive benefit from the reputation or goodwill from the mark. Accordingly, Amazon's intent is a disputed fact that cannot be determined as a matter of law.

### Evidence of Actual Confusion

It is undisputed that there is no evidence of actual confusion.[61] This factor weighs against a finding of likelihood of confusion.

---

[56] Amazon's Opposition 30–31.

[57] Plaintiffs' Reply at 42 (citing *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research,* 527 F.3d 1045, 1055 (10th Cir. 2008)).

[58] *Utah Lighthouse Ministry,* 527 F.3d at 1055.

[59] *Heartsprings, Inc. v. Heartspring, Inc.,* 143 F.3d 550, 556 (10th Cir.1998).

[60] *King of the Mountain,* 185 F.3d at 1090 (internal quotation marks and citation omitted).

[61] *See* Undisputed Material Facts, ¶ 16.

***The Relation in Use and the Manner of Marketing Between the Goods or Services Marketed by the Competing Parties***

This fourth factor is generally analyzed by "separately considering (1) the similarity of products and (2) the similarity in the manner of marketing the products."[62] "'The greater the similarity between the products . . . the greater the likelihood of confusion.'"[63] The similarity of the products, to some degree, weighs in Plaintiffs' favor because Amazon offers for sale products that are somewhat similar to SeroVital. Evidence has been presented that once a consumer clicked on the SeroVital sponsored ad, the consumer was taken to an Amazon's landing page that contained offers for sale of products, such as, Original Forumula GH3, AminoGH, Secratatropin HGH, Genf20 Plus, Controlled Labs Blue Growth, Gerovital H3 Evolution, and HGH Complex.

As to the similarity in the manner of marketing, both companies market their products online.  Amazon contends that initial interest confusion is unlikely given the context of the online ads and Amazon's clear identification as the source of the advertisement. Although Amazon's sponsored ads identified Amazon as the source of advertisement, the ads stated that SeroVital was available on Amazon. Therefore, the language of the sponsored ads could have caused initial-interest confusion; that is, consumers being lured to Amazon with the expectation of SeroVital being available for purchase on the Amazon marketplace. This factor weighs in Plaintiffs' favor.

***The Degree of Care Likely to be Exercised by Purchasers***

"A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion. . . . The relevant inquiry focuses on the consumer's degree of care

---

[62] Sally Beauty Co., Inc., 304 F.3d at 974.

[63] Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co., 22 F.3d 1527, 1532 (10th Cir.), cert. denied, 513 U.S. 1052, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994) (citation omitted).

14

exercised at the time of purchase."[64] Amazon argues that purchasers will not be confused because internet shoppers are sophisticated and "[s]hopping for specialized or costly goods—such as an expensive dietary supplement that claims to promote the human body's generation of a powerful substance like human growth hormone—involves a high level of care by consumers."[65]

Consumers of such a product are likely to exercise a moderate to high degree of care and deliberate much more about the purchase, which weighs against a finding of likelihood of confusion. However, having potentially been misled into an initial interest, a potential SeroVital consumer may satisfy him or herself that the other related products on Amazon's landing page are at least as good as the SeroVital product.[66] Amazon's reputation for helpful recommendations may work here to its detriment. Amazon's ad, therefore, may have impermissibly capitalized on the goodwill associated with the mark. There are triable issues as to this factor.

### *The Strength or Weakness of the Marks*

"To assess the relative strength of a mark, one must consider the two aspects of strength: (1) 'Conceptual Strength: the placement of the mark on the [distinctiveness or fanciful-suggestive-descriptive] spectrum;' and (2) 'Commercial Strength: the marketplace recognition value of the mark.'"[67] "Under the conceptual strength prong, the categories, in descending order of strength, are: fanciful; arbitrary; suggestive; descriptive; and generic."[68] Neither party has addressed this particular factor. However, it seems that SeroVital falls under the fanciful mark

---

[64] Sally Beauty Co., Inc., 304 F.3d at 975.

[65] Amazon's Opposition at 27.

[66] *See* docket no. 62-7.

[67] *King of the Mountain Sports,* 185 F.3d at 1093 (quoting 2 McCarthy on Trademarks and Unfair Competition § 11:83 (4th ed.)).

[68] *Id.*

definition of a "coined word[ ] that . . . [has] been invented or selected for the sole purpose of functioning as a trademark."[69] Also, it seems likely that the mark has great commercial strength, as the evidence shows that in less than a one year period, Hydra generated over ▆▆▆ sponsored ads, which resulted in approximately ▆▆▆ clicks on the sponsored ads.

### Other Relevant Factors

"[O]ther factors may be considered, and the weight of any given factor can depend very much on context."[70] *1-800 Contacts* is instructive in the particular circumstances of this case. *1-800 Contacts* dealt with initial-interest confusion. The Tenth Circuit applied initial-interest confusion to the facts of the case:

> [A] consumer enters a query for '1-800 Contacts' on Google; sees a screen with an ad for Lens.com that is generated because of Lens.com's purchase of one of the nine Challenged Keywords; becomes confused about whether Lens.com is the same source as, or is affiliated with, 1-800; and therefore clicks on the Lens.com ad to view the site. Lens.com has exploited its use of 1-800's mark to lure the confused consumer to its website.[71]

In determining whether Lens.com's keyword activity was likely to lure the confused consumer to its website, the court focused on the AdWords data evidence which set "an upper limit on how often consumers really were lured in such fashion."[72] The data revealed "that initial-interest confusion occurred at most 1.5% of the time[.]"[73] The court concluded that such a low number "cannot support an inference that Lens.com's keyword activity was likely to 'lure[]' consumers away from 1-800."[74]

---

[69] *Id.*

[70] *1-800 Contacts*, 722 F.3d at 1243.

[71] *Id.* at 1244.

[72] *Id.*

[73] *Id.*

[74] *Id.*

In the present case, there is similar evidence setting an upper limit on how often consumers were lured to Amazon's website by clicking on the sponsored ads. It is undisputed that during the Advertising Period, approximately ███ sponsored ads were generated. Out of those, there were approximately ███ clicks on the sponsored ads. The click to impression rate of the sponsored ads is approximately █ percent. This rate sets the "upper limit on how often consumers really were lured in such a fashion." Amazon contends that of the "███ users that clicked on the ads for SeroVital, only ██ made any purchase at Amazon.com, a measly █ percent."[75] Although consumer purchases constitute ███ percent, the focus is not on the purchase rate but instead on the █ percent rate that consumers were lured to Amazon's website. ███ percent, although a relative small number, is not so insufficient to suggest that there was no likelihood of confusion.

In weighing the *King of the Mountain* factors above, initial-interest confusion is a close decision. Though summary judgment is appropriate on the issue of likelihood of confusion in appropriate cases, this is not such a case. A rational fact-finder could find in favor of either party on this issue—especially given the uncertainty surrounding the intent and degree of care prongs. Amazon's and Plaintiffs' cross-motions for summary judgment on Plaintiffs' trademark infringement claim under § 1114(1)(a) are DENIED.

### Summary Judgment is Granted in Favor of Amazon as to Plaintiffs' Trademark Infringement Claim under § 43(a) of the Lanham Act, codified as 15 USC § 1125(a)

Section 1125(a) is a broad federal unfair competition provision. It creates a federal cause of action against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

---

[75] Amazon's Opposition at 31.

17

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[76]

Section 43(a) may be violated by a range of conduct. Plaintiffs style their second cause of action as an "unfair competition by false representation in violation of Lanham Act 15 U.S.C. § 1125(a)(1)(A)." This subsection is generally referred to as the trademark infringement prong or false designation of origin theory of recovery.[77] In order to establish a claim for trademark infringement under § 1125(a)(1)(A), the following elements must be established: (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used 'an identical or similar mark' in commerce, and (3) that the defendant's use is likely to confuse consumers."[78] Notably, an infringement claim under § 1125(a)(1)(A) has nearly identical elements to an infringement claim under § 1114(1)(a).[79] Although Plaintiffs have specifically designated their second cause of action under § 1125(a)(1)(A), they instead request summary judgment relief on a false advertising claim.[80] A false advertising claim falls under § 1125(a)(1)(B) of the Lanham Act. In order to prevail on a false advertising claim, Plaintiffs must proof that

---

[76] 15 U.S.C § 1125(a).

[77] McCarthy, supra, § 27:13.

[78] *1-800 Contacts*, 722 F.3d at 1239 (internal quotation marks and citation omitted).

[79] *Id.* ("An infringement claim under § [1114(1)(a)] has nearly identical elements [to § 1125(a)(1)(A)] except that the registration of a mark [under § 1114(1)(a)] serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce." (internal quotation marks and citation omitted)).

[80] Plaintiffs' MPSJ at 30 ("[T]his Court should grant partial summary judgment finding Amazon liable for false advertising under 15 U.S.C. § 1125(a)(1) (2014).").

(1) [Amazon] made a false or misleading description of fact or representation of fact in a commercial advertisement about [its] own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) [Amazon] placed the false or misleading statement in interstate commerce; and (5) [Plaintiffs] ha[ve] been or . . . [are] likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.[81]

Amazon argues that Plaintiffs' false advertising theory is untimely. "Amazon understood throughout this litigation that Plaintiffs are only asserting a claim under § 1125(a)(1)(A)."[82] Amazon contends that "[i]t would be fundamentally unfair to allow Plaintiffs to interject this new claim at the end of the case, after the close of discovery and after the dispositive motions cutoff. Amazon would be prejudiced because, among other reasons, it has not had the benefit of conducting discovery into the bases for this claim."[83] Plaintiffs state that even if they "have not technically designated their Second Claim for Relief as 'False Advertising' under § 1125(a)(1)(B), Plaintiffs have put Defendant on notice through its pleadings in its Amended Complaint . . . paras. 42 through 47, that Defendant has made false representations likely to cause confusion stemming from Defendant's unlawful bait advertising."[84]

Plaintiffs' allegations in paragraphs 42 through 47 of their Amended Complaint state:

42. Defendant has without authorization, on or in connection with the promotion and sale of its goods in interstate commerce, made or contributed to the making of representations of fact that are false and misleading which are likely to cause confusion, or to cause mistake, or to deceive purchasers and potential purchasers into believing that Plaintiffs' product, Sero[V]ital, is available for purchase from Defendant.

43. Defendant's acts constitute unfair competition and are misleading representations of facts.

---

[81] *Zoller Labs., LLC. v. NBTY, Inc.*, 111 F. App'x 978, 982 (10th Cir. 2004).

[82] Amazon's Opposition at 35.

[83] *Id.* at 36.

[84] Plaintiffs' Reply at 40.

44. Upon information and belief, Defendant's acts of unfair competition and misrepresentations have led to, among other things, initial interest confusion in consumers stemming from Defendant's "bait and switch" practices.

45. Upon information and belief, Defendant's acts of unfair competition and misrepresentations have deceived and, unless restrained, will continue to deceive the public, including consumers and retailers, and have injured and unless constrained will continue to  injure Plaintiffs and the public, including consumers and retailers, causing damages to Plaintiffs in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of Plaintiff and its product, Sero[V]ital.

46. Upon information and belief, Defendant's acts of unfair competition are willful, intentional and egregious and make this an exceptional case within the meaning of 15. U.S.C. §1117(a), entitling Plaintiffs to attorney's fees.

47. Plaintiffs have no adequate remedy at law to compensate them for all the damages the Defendant's wrongful acts have and will cause. [85]

"As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because . . . [it] did not set forth in the complaint a theory on which . . . [it] could recover, 'provided always that a late shift in the thrust of the case will not prejudice the other party in maintaining his defense upon the merits."[86] "The purpose of 'fact pleading,' as provided by Fed.R.Civ.P. 8(a)(2), is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the parties have opportunity for discovery."[87] Although Amazon contends that it has not had the benefit of conducting discovery into the bases for the false advertising theory and will suffer prejudice if Plaintiffs' theory is considered, Amazon does not state what, if any, additional discovery would be needed and how it might affect the outcome of the pending cross-motions for summary judgment.  Prejudice seems particularly unlikely here, as Amazon has

---

[85] Amended Complaint at 11–12.

[86] *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991) (quoting *5 C. Wright & A. Miller, Federal Practice & Procedure* § 1219 at 194 (1990)).

[87] *Id.* at 1091.

responded to the merits of Plaintiffs' false advertising claim. Accordingly, Plaintiffs' false advertising theory will be considered.

Plaintiffs' false advertising claim, however, fails on the merits. Specifically, Plaintiffs have failed to present evidence that Amazon's misrepresentation was material—that the misrepresentation likely influenced consumers purchasing decisions. Failure to establish any element of a prima face case for false advertising is fatal to Plaintiffs' false advertising claim and makes it unnecessary to examine the other elements.[88] Plaintiffs contend that "the literally false nature of Amazon's ads do not require a showing of materiality."[89] This is incorrect. The Tenth Circuit has stated that materiality of the misrepresentation is a required element for a false advertising claim.[90] Plaintiffs also argue that "the advertisements of Amazon were material on their face."[91] More specifically, Plaintiffs state that "[p]art of the purchaser's decision is *where* one purchases the product. People shop Amazon because of the vibrant Marketplace. These essential facts regarding the nature and reputation of Amazon, and promises of the ad, on their face are likely to influence the purchasing decisions of consumers."[92]

In the present case, Amazon's misrepresentation was that consumers could purchase SeroVital on Amazon.com. But when consumers clicked on the sponsored ads, they were taken to a landing page that did not contain for sale any SeroVital products. Amazon's misrepresentation thus related to the marketing of the product, that is, the channel through which a consumer may purchase the product. Amazon's misrepresentation did not discuss the quality or

---

[88] McCarthy, supra, §§ 27:24 and 27:35.

[89] Plaintiffs Reply at 40–41.

[90] *Zoller Labs.*, 111 F. App'x 978; *see also Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250-51 (11th Cir. 2002) ("To the extent that the Fifth Circuit decision marks a circuit split, we stand with the First and Second Circuits, concluding that the plaintiff must establish materiality even when a defendant's advertisement has been found literally false.").

[91] Plaintiffs' Reply at 41.

[92] *Id.*

characteristics of SeroVital which could potentially affect consumers' purchasing decisions.[93]

Under the undisputed facts on this motion, no reasonable jury could find that Amazon's

misrepresentation likely influenced a consumer's purchasing decision.[94] Because Plaintiffs bear

the burden of proof at trial as to each essential elements of their false advertising claim, and have

failed to present any evidence on the materiality element, Plaintiffs' summary judgment on their

false advertising claim is denied. Summary judgment is appropriate in Amazon's favor as to

Plaintiffs' false advertising claim.

### Summary Judgment on Plaintiffs Utah Truth in Advertising Act Claim is Inappropriate

Plaintiffs argue that Amazon has violated the UTAA by using deceptive, misleading, and

false advertising practices relating to the sale of SeroVital on Amazon's website. The stated

legislative purpose of the UTAA "is to prevent deceptive, misleading, and false advertising

practices and forms in Utah."[95] Further, the UTAA "is to be construed to accomplish that

purpose and not to prohibit any particular form of advertising so long as it is truthful and not

otherwise misleading or deceptive."[96]

Plaintiffs bring their UTAA claims under § 13-11a-3(i) and (t).[97] These subsections state,

in relevant part: "Deceptive trade practices occur when, in the course of a person's business,

vocation, or occupation that person: . . . (i) advertises goods or services or the price of goods and

services with intent not to sell them as advertised . . . or (t) engages in any other conduct which

---

[93] *See Johnson & Johnson Vision Care,* 299 F.3d at 1250 ("A plaintiff may establish this materiality requirement by proving that 'the defendants misrepresented an inherent quality or characteristic of the product.'" (quoting Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d Cir.1997) (internal quotations omitted)).

[94] *Cf. Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1179 (9th Cir.2010) ("[R]easonable, prudent and experienced internet consumers. . . . skip from site to site, ready to hit the back button whenever they're not satisfied with a site's contents. They fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary.").

[95] Utah Code Ann. § 13-11a-1.

[96] *Id.*

[97] Plaintiffs' MPSJ at 22.

similarly creates a likelihood of confusion or a misunderstanding."[98] Plaintiffs seek both
injunctive relief and damages pursuant to the UTAA. Amazon contends that Plaintiffs' motion
for summary judgment on their UTAA claims must be denied under both subsections.

### *Utah Code Ann. § 13-11a-3(1)(i)*

Amazon, citing the official comments to the Uniform Deceptive Trade Practices Act
("UDTPA"), claims that subsection (i) "has historically referred to 'bait advertising,' which is 'a
practice by which a seller seeks to attract customers through advertising at low prices products
which he does not intend to sell in more than nominal amounts.'"[99] Amazon argues that
"Plaintiffs do not contend that any of Amazon's advertisements were misleading with respect to
the availability of Sero[V]ital at a certain price."[100] Amazon further states that "subsection (i)
requires intent, yet the evidence in the record demonstrates that what triggered the
advertisements was Plaintiffs' listing of SeroVital for sale on Amazon.com in contravention of
Amazon's policies banning such products."[101] According to Amazon, "[i]t is not and has never
been Amazon's intent to place advertisements for items that it does not offer on its website."[102]

Plaintiffs reply that "the language of the UTAA subsection 3(1)(i) is not identical to
[section ] (9) of the UDTPA"[103] and "rather than referring to a comment from the 1966 UDTPA,
the true intent of the Legislature should be determined from the UTAA's actual language."[104]
Plaintiffs argue that "it is undisputed that Amazon repeatedly advertised, through its sponsored

---

[98] Utah Code Ann. § 13-11a-3(i) and (t).

[99] Amazon's Opposition at 39 (citing Uniform Deceptive Trade Practices Act, Official Comment to §§ 2(a)(9) & (10) (1966)).

[100] Amazon's Opposition at 40.

[101] *Id.*

[102] *Id.*

[103] Plaintiffs' Reply at 36.

[104] *Id.* at 37.

ads to each individual consumer entering a search on Google, Yahoo, or Bing, that SeroVital was available for sale on Amazon.com during the [Advertising Period] . . . of almost 9 months, when Amazon had the stated intent not to sell SeroVital as advertised."[105]

The UDTPA's comment provides a narrow definition of "bait advertising." The crux of such advertising is that the offer to sell as contained in the advertisement is not a bona fide effort to sell the advertised product. Thus, bait advertising describes a range of commercial behaviors where the initial offer is insincere.  The Code of Federal Regulations, Title 16 Commercial Practices, for example, defines bait advertising as

> an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised.[106]

Accordingly, Amazon's sponsored ads for SeroVital fall within the definition of bait advertising. With this definition in mind, the remaining issue is whether Amazon advertised SeroVital "with *intent* not to sell . . . as advertised."  Amazon argues that "[i]t is not and has never been Amazon's intent to place advertisements for items that it does not offer on its website. When Amazon discovers Hydra has placed an advertisement using a trademark for a product it does not offer, it removes the trademark from that advertisement."[107] Plaintiffs contend that Amazon "had the stated intent not to sell SeroVital as advertised."[108] Accordingly, Amazon's intent to advertise the product after banning the product from its marketplace on December 13, 2012 is a disputed material fact that cannot be resolved on summary judgment.

---

[105] *Id.* at 37.

[106] 16 C.F.R. § 238.0.

[107] Amazon's Opposition at 40.

[108] Plaintiffs' Reply at 37.

24

Amazon's and Plaintiffs' cross-motions for summary judgment on Plaintiffs' UTAA claim under to § 13-11a-3(1)(i) are DENIED.

### Utah Code Ann. § 13-11a-3(1)(t)

Section 13-11a-3(1)(t) is the catch-all provision of the UTAA. It states that a deceptive trade practice occurs when "[a] person engaged in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."[109] UTAA does not provide a definition of or the factors to consider in determining "a likelihood of confusion or of misunderstanding" under the UTAA. The *King of the Mountain* factors, used to determine the likelihood of confusion under the Lanham Act, seem most appropriate under the present circumstances. As the factors have been discussed above, there is no need to reiterate the previous discussion. Summary judgment is not appropriate on the issue of the likelihood of confusion based on the present facts and the *King of the Mountain* factors. Accordingly, Amazon's and Plaintiffs' cross-motions for summary judgment on Plaintiffs' UTAA claim pursuant to 13-11a-3(1)(t) are DENIED.

### Plaintiffs Are Not Entitled To Summary Judgment for a Permanent Injunction

Plaintiffs move for a permanent injunction under the Lanham Act and UTAA. Specifically, "Plaintiffs request that this Court enjoin Amazon from using its Hydra program until and unless it is able to verify to the Court that it has eliminated from its program publication of advertisements about products, particularly those owned by Plaintiffs, that it does not sell on its website."[110] Amazon contends that a permanent injunction is not warranted because it has "long ago ceased its use of Plaintiffs' mark."[111] Amazon further argues that "Plaintiffs' requested injunction is overbroad. They seek to enjoin Amazon from using Hydra to generate

---

[109] Utah Code Ann. § 13-11a-3(1)(t).

[110] Plaintiffs' MPSJ at 36.

[111] Amazon's Opposition at 40.

advertisements for any products and in any capacity, whether Amazon sells those products or not."[112]

"It is well settled [that] an injunction must be narrowly tailored to remedy the harm shown."[113] "[A] district court's decision to issue or deny a permanent injunction [is reviewed] for an abuse of discretion."[114] "A district court abuses its discretion when it issues an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."[115] Accordingly, whether or not a permanent injunction is ultimately granted against Amazon, the scope of the injunction must be narrowly tailored to remedy the harm, if any, suffered by Plaintiffs. Plaintiffs are not entitled to the broad injunctive relief they have requested.

### *Injunctive Relief Under § 1114(1)(a) of the Lanham Act*

Under the Lanham Act, injunctive and other equitable relief may be granted to prevent further violations of a Plaintiff's trademark rights.[116] "For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."[117] At this juncture, the actual success on the merits element for injunctive relief has not been satisfied. Until the disputed factual matters concerning the likelihood of confusion with respect to Amazon's use of Plaintiffs' mark are resolved, a permanent injunction is inappropriate.

---

[112] *Id.* at 41.

[113] *Garrison v. Baker Hughes Oilfield Operations, Inc.,* 287 F.3d 955, 962 (10th Cir. 2002).

[114] *John Allan Co. v. Craig Allen Co. L.L.C.,* 540 F.3d 1133, 1142 (10th Cir. 2008).

[115] *Id.* (quoting *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 822 (10th Cir. 2007)).

[116] 15 U.S.C. § 1116(a).

[117] *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 822 (10th Cir. 2007).

*Injunctive Relief Under UTAA*

Section 13-11a-4(2)(a) of UTAA states: "Any person . . . may maintain an action to enjoin a continuance of any act in violation of this chapter. . . . If, in such action, the court finds that the defendant is violating or has violated any of the provisions of this chapter, it *shall* enjoin the defendant from continuance of the violation."[118] And "[i]t is not necessary that actual damages be proven."[119] Thus, "if a court finds that a defendant is violating or has violated . . . [UTAA], the court is required, by the word 'shall,' to enjoin the defendant from further violations."[120] Plaintiffs' request for permanent injunction pursuant to UTAA is denied at this time because fact issues remain concerning Plaintiffs' entitlement to such relief.

## Amazon is Entitled to Summary Judgment that Statutory Damages Under the UTAA Are Limited to a Single Award of $2,000

Amazon asks for judgment in its favor on the maximum allowable statutory damages that can be awarded under the UTAA.[121] Section 13-11a-4(2)(a) states, in relevant part, that "[a]ny person . . . may maintain an action to enjoin a continuance of any act in violation of this chapter and, if injured by the court, for the recovery of damages." Subsection (b) further states that "[i]n addition to injunctive relief, the plaintiff is entitled to recover from the defendant the amount of actual damages sustained or $2,000, whichever is greater."[122] Plaintiffs have indicated that they are pursing statutory damages under UTAA.[123] Plaintiffs argue that "[w]hen subsections (2)(a) and (2)(b) of § 13-11a-4 are read together, the plain language of the statute allows a plaintiff to

---

[118] Utah Code Ann. § 13-11a-4(2)(a) (emphasis added).

[119] *Id.* § 13-11a-4(2)(a).

[120] *Proctor & Gamble Co. v. Haugen*, 947 F. Supp. 1551, 1555 (D. Utah 1996).

[121] Amazon's MSJ at 2.

[122] Utah Code Ann. § 13-11a-4(2)(b).

[123] Plaintiffs' Reply at 42 ("Consequently, Plaintiffs must rely on the remedies of injunctive relief under the Lanham Act and the UTAA to prevent future violations, and a claim under the UTAA for statutory damages. . . .").; *see also* Plaintiffs' Memorandum in Opposition to Defendant Amazon.com, Inc.'s Motion for Summary Judgment as to Liability and Damages ("Plaintiffs' Opposition") at 31, docket no. 82, filed August 21, 2014 (same).

seek injunctive relief and actual or statutory damages for any act in violation of the statute. Thus, statutory damages should be awarded for each violation of the UTAA."[124] That is, Plaintiffs interpret the section to allow a finding "that each separate publication of the offending ad and individual solicitation constitutes a separate deceptive trade practice, or, at a minimum, a violation occurs each time an individual consumer clicked on an offending ad in response to Amazon's individualized solicitation."[125] Plaintiffs contend that "[a]llowing Amazon to continue to publish customized ads in response to individuals searching for SeroVital for the sole purpose of driving more purchasers to its website, in exchange for payment of a mere $ 2,000, one-time fee, would be the equivalent of 'a kind of judicially imposed compulsory license' which would allow Amazon free use of the SeroVital trademark in perpetuity."[126]

Amazon argues that "if Plaintiffs have a viable UTAA claim, they are entitled only to a single statutory damages award of $2,000."[127] The plain language of the statute, according to Amazon, entitles Plaintiffs to a single award of $2,000 in statutory damages.[128] Amazon cites to *Anderson v. Felsted,*[129] as additional support for its interpretation of the UTAA. *Anderson* dealt with the Utah Consumer Sales Practices Act ("UCSPA") which contains language similar to the section at issue in this case. Section 13-11-19(2) of the UCSPA reads: "A consumer who suffers loss as a result of a violation of this chapter may recover . . . actual damages or $2,000, whichever is greater, plus court costs." *Anderson* interpreted the provision to create "the opportunity for a consumer to recover what is essentially a civil penalty in the amount of $2000

---

[124] Plaintiffs' Opposition at 33–34.

[125] *Id.* at 36.

[126] *Id.*

[127] Defendant Amazon.com, Inc.'s Reply in Support of its Motion for Summary Judgment as to Liability and Damages ("Amazon's Reply") at 2, docket no. 100, filed September 15, 2014.

[128] *Id.* at 9.

[129] 2006 UT App 188, 137 P.3d 1.

where the consumer's actual damages may otherwise be de minimis, speculative, or too difficult to prove[.]"[130] Amazon also points out that other provisions of Chapter 13 of the Utah Code specifically include the "per violation" or "for each violation" language which is missing from the UTAA and therefore the omission should be presumed to be purposeful by the Utah Legislature.[131] As for Plaintiffs' contention that a single award of $2,000 would amount to a judicially imposed compulsory license, Amazon argues that no such compulsory license could occur when the $2,000 single payment is coupled with a right to injunctive relief to stop any further violations.[132]

"It is well settled that when faced with a question of statutory interpretation, 'our primary goal is to evince the true intent and purpose of the Legislature.'"[133] "The best evidence of the legislature's intent is the plain language of the statute itself."[134] Utah courts "presume[ ] that the expression of one [term] should be interpreted as the exclusion of another."[135] Utah courts "therefore seek to give effect to omissions in statutory language by presuming all omissions to be purposeful."[136] The plain meaning of the provision at issue in the present case grants a plaintiff the opportunity to elect either to prove *actual* damages sustained, or to claim a *statutory* damage award of $2,000. There is no indication that the Utah Legislature intended to allow an award of statutory damages on a per violation basis. It is reasonable to assume that the Utah Legislature chose to set a cap on statutory damages while allowing unlimited recovery of actual damages. If

---

[130] *Anderson,* 2006 UT App 188, ¶ 14.

[131] Amazon's MSJ at 33.

[132] Amazon's Reply at 9–10.

[133] *Marion Energy, Inc. v. KFJ Ranch P'ship,* 2011 UT 50, ¶ 14, 267 P.3d 863 (quoting *Salt Lake Cnty. v. Holliday Water Co.,* 2010 UT 45, ¶ 27, 234 P.3d 1105).

[134] *Id.*

[135] *Id.* (internal quotation marks and citation omitted).

[136] *Id.*

an aggrieved party believes that statutory damages are not adequate, that party may seek to prove actual damages. Moreover, Amazon is correct that a single award of $2,000 would not amount to a judicially imposed compulsory license, because the aggrieved party would also be entitled to injunctive relief of any further violations. Finally, this interpretation seems appropriate given that an aggrieved party, if meritorious on its UTAA claim, would not only be entitled to injunctive relief, actual or statutory damages, but would also be entitled to attorneys' fees and other costs, and corrective advertising.[137] Accordingly, if Plaintiffs ultimately prevail on their UTAA claim, they will be entitled to a single award of $2,000 in statutory damages.

## ORDER

IT IS HEREBY ORDERED that Amazon's motion for summary judgment[138] is GRANTED IN PART AND DENIED IN PART.

1) With respect to Plaintiffs' claims for trademark infringement pursuant to 15 U.S.C. § 1114 and violations of UTAA, Amazon's motion is DENIED;

2) Although Amazon moved for summary judgment on Plaintiffs' unjust enrichment claim, its briefing did not address this claim. Under Federal Rule of Civil Procedure 56, the moving party has the burden of establishing that no genuine issues of material fact exist with respect to each claim for which the movant seeks summary judgment. Amazon has failed to meet its burden on summary judgment with respect to this claim. Accordingly, Amazon's motion for summary judgment on Plaintiffs' unjust enrichment claim is DENIED;

---

[137] *See* Utah Code Ann. § 13-11a-4(2)(c) ("Costs shall be allowed to the prevailing party unless the court otherwise directs. The court shall award attorneys' fees to the prevailing party."); *see also* § 13-11a-4(3) ("The court may order the defendant to promulgate corrective advertising by the same media and with the same distribution and frequency as the advertising found to violate this chapter.").

[138] Docket no. 59.

3) Amazon is entitled to summary judgment on Plaintiffs' false advertising claim
   pursuant to 15 U.S.C. § 1125(a);

4) Amazon is entitled to summary judgment that statutory damages under the UTAA is
   limited to a single award of $2,000.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment is
DENIED.[139]

Within fourteen days, the parties shall meet and confer and email to

dj.nuffer@utd.uscourts.gov a redacted version of this document that may be filed on the public

record.  The redacted copy shall be a text-based PDF document.

Dated March 27, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[139] Docket no. 62.